HEIRS OF MANUEL ENRIQUE FERNÁNDEZ TAVÁREZ, ETC., Appellants, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent.

No. CI–62–16.    Decided March 27, 1963.

*A. Cadilla Ginorio* for appellants. *Donald R. Dexter* and *Carmen Ana Archeval* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The heirs of Manuel Enrique Fernández Tavárez appeal to this Court from a decision rendered by the Industrial Commission of Puerto Rico on August 14, 1962, decreeing that there is no causal relation between the death of their predecessor and the labor accident sustained by him, thereby confirming the refusal of the Manager of the State Insurance Fund to award compensation.

The said predecessor, Manuel Enrique Fernández Tavárez, a young electrician about 19 years of age, sustained an accident on February 17, 1961, the second day he was working in certain property of the heirs of Antonio Valdés at the place known as Porrada of the ward of Islote of Arecibo, while dumping sugar-cane bundles into a truck where they were received by his fellow worker, witness Confesor Torres Natal. When one of the bundles broke open in the air during the task of loading the truck, the cane fell over Fernández, hit him on the left eye, "and the sawdust and waste matter of the cane penetrated into his eye" (Tr. Ev. 13–14). Rafael Valdés, judicial administrator of the heirs owners of the property, testified that Fernández went to see him that same day and "claimed that when he dumped the sugar-cane bundle into the truck the waste matter fell over his face and entered into his eye. I always make my own investigation. His eye was very irritated; it was shedding tears and *there was a small scratch inside the lid.* For that reason I had to report it" (Tr. Ev. 19). (Italics ours.) The laborer's mother testified that the day of the accident he returned home

at noontime "with his eye quite red, as if he had received a blow, because it was bloodshot." (Tr. Ev. 6.)

Fernández went to the office of the State Insurance Fund in Arecibo where he was treated by Dr. Zapata. This physician's report is to the effect that he examined him on February 20; that "the present lesion or affection" is an amblyopia of the right eye, or a diminution of vision without detectable organic lesion of the eye; and, lastly, that the laborer could resume work the following day (exhibit 3). The laborer returned and worked two or three days more, but since his eyesight was still bad he went to the office of the State Insurance Fund in San Juan. On February 24 he appealed to the Industrial Commission from the decision of the Manager of the State Insurance Fund of February 21 ruling that there was no causal relation between the condition of his left eye and the accident allegedly sustained on the 17th day. On February 24 Fernández was examined by the Commission's medical adviser who referred him to Dr. Montalvo Carroll, the consulting ophthalmologist. On March 6, 1961 the latter submitted a report stating that the injured laborer presented a detachment of the lower retina of the left eye, a condition which in his opinion bore relation to the trauma suffered on February 17. That same day, March 6, 1961, Dr. Guillermo Fernández, oculist of the State Insurance Fund, examined the laborer and recommended that the case be reinvestigated, since on the basis of a completely different description of the accident "Dr. Zapata's nonrelation report was correct." Dr. Guillermo Fernández examined him and found a detachment of the retina in the left eye; that in order for a retina to detach is must be diseased, but a "trauma" may be a factor which will bring about the detachment. The laborer remained in the Ophthalmic Institute under treatment until March 15. Later, at his request, he was given a pass until the 20th of that month; after that he was operated. This physician added that the examination

of March 6 did not disclose externally anything at all: no scratch, no cut, no external injury (Tr. Ev. 25–26). The laborer died on March 26, the cause having been determined as Weil's disease.

According to the testimony of the expert, Dr. Jackie Cocker, this disease is contracted by contagion or direct contact, when the person eats contaminated food, or by indirect contact, when the person comes in contact "with animals which are infested or whose urine contains the causal carrier." Any abrasion of the skin or contusion may serve as channel of entry (Tr. Ev. 31, 33 and 34). The evidence showed that rats abound in sugar-cane plantations and particularly in the place of the accident (Tr. Ev. 15–16).

The Commission dismissed the case on April 7, 1961, but, reconsideration of the order of May 9 having been sought, the Manager of the Insurance Fund was granted 10 days to plead. After performing the autopsy on the body on November 22, 1961, the Manager ruled that the case was not covered by the existing Workmen's Accident Compensation Act, since the case was diagnosed on February 17 of that year as one of amblyopia and the laborer died on the following "April 20" from Weil's disease. Feeling aggrieved by this determination, appellants appealed to the Industrial Commission and the latter, after hearing the case on May 21, 1962, entered its decision of August 14 of the same year confirming the Manager's ruling. In that decision the Commission held, however, that the following facts were proved:

(1) The accident sustained by the laborer on February 17, 1961 caused the detachment of the lower retina of the left eye;

(2) That when he arrived home the left eye was too red and bloodshot, shedding tears, and that he had a small scratch inside the eyelid;

(3) That any abrasion, scratch or contusion on the skin may serve as channel of entry to Weil's disease, which is an

occupational disease, persons living in places surrounded by sugar cane, where there is no sanitary service, being susceptible to this disease;

(4) That the clinical records do not reveal that the laborer had sustained any cut or scratch in the left eye.

The Commission held that the detachment of the retina in this case bears relation to the accident in question, but that the Weil's disease was not connected with the accident. Appellants allege that the Industrial Commission erred in concluding that the laborer did not contract Weil's disease as a result of the accident sustained on February 17, 1961, and that its decision is contrary to the evidence and to law.

We have held time and again that within the liberal construction to be placed on the Workmen's Accident Compensation Act, any doubt should be resolved in favor of the compensation. We have also said that when the findings of fact on which the Commission's decision is based are supported by substantial evidence presented at the corresponding hearing, we must accept the same for the purpose of disposing of the case. *Gallart, Manager* v. *Industrial Commission, ante,* p. 16; *Meléndez* v. *Industrial Commission,* 85 P.R.R. 54 (1962); *Candelaria* v. *Industrial Commission,* 85 P.R.R. 18 (1962); *Cepeda* v. *Industrial Commission; Rivas, Int.,* 76 P.R.R. 750 (1954); *Colón* v. *Industrial Commission,* 59 P.R.R. 842 (1942).

In *Salazar* v. *Indus. Comm.; Mgr. State Fund, Int.,* 76 P.R.R. 102 (1954),[1] a physician exposed for many years to X-rays contracted epidermal cancer which caused his death.

---

[1] In this case we also said at p. 108 that:

".... *first,* and injury by accident occurs if the cause is gradual and imperceptible, as in exposure to dust or poison, provided the result is very definite as to time: a sudden collapse at a particular moment .... *Second,* injury by accident also occurs in the converse case where the cause is abrupt, as in a relatively brief exposure to severe chilling, even though the result is protracted—for example, gradual succumbing to pneumonia .... *Third,* where neither cause nor result is at all sudden, a claim cannot be granted on the basis of injury by accident."

In holding that in this case an injury by accident did not occur and, hence, that the case was not compensable, we established the following doctrine:

"... In order to prove that an injury by accident occurred, it must be established (1) that the injury was due to an unexpected event or events and (2) that the injury must be traceable within reasonable limits to a definite time."

In *Vélez* v. *Industrial Commission*, 79 P.R.R. 266 (1956), we held that the Weil's disease which caused the laborer's death was not due to any compensable accident; that that disease was one of the normal and inherent hazards of the work performed by the deceased laborer; "in other words, *an occupational disease*, in the strict meaning of this term," which is not compensable since the lawmaker did not include it in the Table of Occupational Diseases and their Causes appearing in § 3 of the Act (11 L.P.R.A. § 3). According to the facts of this case, the laborer's work consisted in cleaning the irrigation canals of the sugar-cane plantations. One day his fellow workers noticed that he was running a high temperature and took him immediately to the hospital in Guayama where he died as a result of Weil's disease. It was stipulated in this case that the laborer *"did not suffer any wound or fall or any labor accident."* (Italics ours.) Citing with approval the doctrine announced in *Salazar, supra*, we said specifically:

"It is well to note above all that a supposition or conjecture is not sufficient to establish the causal connection between the infectious disease and the employment. The essential fact that the disease actually arose in the course and as a result of employment must be proved by claimant by competent and trustworthy evidence. Obviously, it is no easy matter to establish this connection in the case of infectious diseases. See 1 Larson, *Workmen's Compensation Law,* § 40.60. But this cannot alter the burden of proof nor eliminate the necessity for establishing such causal connection as a condition precedent to all compensation. In the case at bar, there was no positive expert evidence

that the infection was contracted in the course and as a consequence of employment. In order to reach the conclusion as to the causal connection, the Commission relies on a 'balance of probabilities' and admits that there was no 'direct evidence that the infection was contracted the same day and in the same place where the laborer was working.'

"    .        .        .        .        .        .        .

"In the case of infectious diseases, we believe there is no 'accident' if the germs or parasites enter the human body through the respiratory or gastrointestinal system, or through any other normal and natural channel, and the infection is not assignable to a trauma or lesion of the tissues by mechanical agents which by themselves constitute something unexpected, sudden, and fortuitous, and which will permit the fixing within reasonable limits of the time, place, and occasion of the inception of the disease.

"    .        .        .        .        .        .        .

"There is nothing in the evidence presented to the Commission in the case at bar to show that the deceased laborer contracted Weil's disease by reason of a trauma which in itself was something unexpected, sudden, and fortuitous. Nor are we able to determine in any manner whatever the time, place, and occasion when the disease set in. Otherwise stated, the infectious jaundice in this case was not contracted as a result of an unexpected, sudden, and fortuitous mishap which caused violence in the deceased laborer's body. The mere possibility or conjecture that the laborer could have contracted Weil's disease through some small cut on his hands or by drinking polluted water at work, is not sufficient to classify the mishap as an 'accident.' Infectious jaundice is in fact a typical occupational disease of persons engaged in the cleaning of canals and sewers and also of sugar-cane cutters in flooded areas."

■ An analysis of the facts proved in this case, according to the decision of the Commission, compels us to conclude that, unlike the situation in *Vélez, supra*, it was established here "by competent and trustworthy evidence" that the deceased contracted the Weil's disease as a result of the trauma sustained in the accident of February 17, 1961, "which in itself was an unexpected, sudden and fortuitous event."

In its findings of fact the Commission concluded that (1) as a result of the accident appellants' predecessor sustained a scratch inside the lid of the left eye, and that (2) the clinical records do not disclose that the laborer received any cut or scratch in the left eye. This contradiction may be explained by the fact that from the whole of the evidence it is evident that the first examination of the deceased, on which rests the determination that there was no cut, is wrong, since it only informs an amblyopia of the right eye, while the subsequent clinical records clearly show that the deceased suffered a detachment of the retina of the left eye, which according to Dr. Montalvo Carroll bears relation to the trauma received by the deceased on February 17. Dr. Guillermo Fernández testified that on March 6 the ophthalmological examination did not reveal any scratch or cut nor external lesion of the eye involved. In our opinion, this testimony is not conclusive of the fact that the laborer did not suffer any scratch, since this examination was performed 16 days after the occurrence of the accident, and, on the contrary, there was direct evidence of the lesion and it was so determined by the Commission.

■ It is therefore a fact that the laborer was working in a place where the conditions prevailing were propitious for contracting Weil's disease; that an accident occurred and that as a result thereof he suffered a trauma in the form of a scratch in the lid of the left eye; that Weil's disease set in within the incubation period of that disease (which varies from two days to as much as two weeks in certain cases and a greater period in others) (Tr. Ev. 35) following the accident; and, lastly, that during the period from the date of the accident until his death the laborer was not in any other place where he could have contracted the disease, nor was it shown that he had been in such place prior to the accident. It is well to ask at this point whether it may be concluded from these facts that appellants have established "by competent

and trustworthy evidence" that the Weil's disease in this case "was contracted in the course and as a consequence of the work." Unlike *Vélez, supra,* in which the existence of an accident was not established and, on the contrary, it was admitted that the laborer did not sustain any blow or fall and the Commission merely conjectured that the laborer had contracted the Weil's disease through a small cut in his hands or by taking polluted water, in the case under consideration it has been established and accepted by the Commission that the accident actually occurred and that as a result thereof the laborer suffered a scratch in the eyelid. As in *Vélez, supra,* it was shown that the conditions of the laborer's place of work were propitious for the existence of Weil's disease, since rats, which are the chief carriers of that disease, abound in sugar-cane plantations. The doctrine announced in *Vélez, supra* does not go so far as to require that appellants establish that their predecessor not only suffered a trauma as a result of the accident, but that the germ of Weil's disease actually entered his body through the lesion, which fact was established by expert evidence. In order to comply with the requirements of the doctrine announced in *Vélez* and *Salazar, supra,* it is sufficient to establish, as was done in this case, that the accident in which the laborer sustained the lesion occurred, that the place of the accident was propitious for contracting that disease, that it was contracted within a certain period following the accident which does not exceed the regular incubation period of that disease, and that it was not established that it was contracted in some other way.

The decision appealed from will be set aside and the case remanded to the Industrial Commission of Puerto Rico with instructions to order the State Insurance Fund to liquidate and pay the corresponding compensation.